# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v.<br><br>BRINSON CALEB SILVER<br><br><br>*Defendant(s)* | ) ) ) ) ) ) ) ) | Case No. 2:23-mj-363 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February-June 2023__ in the county of __Franklin__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 401(3) | Criminal Contempt |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Matthew J. Daly, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/14/2023

*Judge's signature*

Chelsey M. Vascura
United States Magistrate Judge

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AGAINST:

## BRINSON CALEB SILVER

I, Matthew J. Daly, Special Agent with the Federal Bureau of Investigation ("FBI") being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been an FBI Special Agent for twenty-six years. Since January 1997, I have been assigned to the FBI's Cincinnati Division – Columbus Resident Agency's Complex Financial Crimes Squad. During my career with the FBI and assigned to a complex financial crimes squad, I have received training and investigated various white collar criminal matters, including corporate fraud related and wire and mail fraud schemes. I am also a Certified Public Accountant who is licensed with the Maryland Board of Public Accountancy and the Accountancy Board of Ohio.

2. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to arrest Brinson Caleb SILVER for violations of 18 U.S.C. § 401(3), Criminal Contempt.

## PROBABLE CAUSE

### SILVER willfully disobeys multiple court orders in a civil case

3. On or about February 2, 2023, Root, Inc., and other plaintiffs (collectively, "Root") filed a civil lawsuit against Brinson Caleb "BC" SILVER, Collateral Damage, LLC ("Collateral Damage"), Eclipse Home Design, LLC ("Eclipse"), and other defendants in the United States District Court for the Southern District of Ohio. The civil case was docketed at case number 2:23-cv-512 and was assigned to U.S. District Judge Sarah D. Morrison and U.S. Magistrate Judge Chelsey M. Vascura. The civil complaint alleged that SILVER was a former employee of Root and that SILVER had defrauded Root of more than $9 million.

4. On or about February 14, 2023, Root filed an amended complaint raising similar allegations. The amended complaint alleged that "[b]etween April 2022 and August 2022, Silver purchased at least three high-end residential properties in Miami, Florida, and Venice, California, totaling in excess of $10 million" and that "Silver's real estate purchases were funded, at least in part," by funds Root alleged to be the proceeds of SILVER's fraud. The Amended Complaint specifically described (1) real property located at an address on Biscayne Island Terrace in Miami Shores, Florida; (2) real property located at an address on North Bayshore Drive, in Miami, Florida; and (3) real property located at an address on Walnut Avenue in Venice, California (collectively, "the three known properties").

5. Also on or about February 14, 2023, Root moved for a temporary restraining order and a preliminary injunction, with the stated purpose of preserving asserts while the case remained pending. On February 16, 2023, Root filed a proposed temporary restraining order.

6. On February 16, 2023, the Court granted Root's motion in part and issued a temporary restraining order. The temporary restraining order provided, in part, the following:

    a. "Eclipse and Silver shall not directly, nor through others, transfer, sell, mortgage or otherwise encumber in any fashion" the three known properties "without leave of Court."

    b. "Silver . . . shall not individually, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control in amounts greater than $ 5,000."

    c. "Silver . . . shall not individually, nor through others, incur charges or cash advances on any credit card, debit card, or checking card or incur liens or encumbrances on real personal property or other assets, including intangible assets. Notwithstanding, Silver . . . may pay personal expenses for day-to-day living in an amount no greater than $ 5,000."

    d. "Collateral Damage and Eclipse shall not directly, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control in amounts greater than $ 5,000."

    e. "Collateral Damage and Eclipse shall not directly, nor through others incur charges or cash advances on any credit card, debit card, or checking card, or incur liens or encumbrances on real property, personal property or other assets, in an amount greater than $ 5,000."

The temporary restraining order provided that the order "shall expire" 14 days after it was entered, subject to any extension.

7. Later on February 16, 2023, for the first time, an attorney entered an appearance on behalf of SILVER, Collateral Damage, and Eclipse.

8. On February 27, 2023, Root filed a proposed agreed preliminary injunction. On the same day, the Court entered an order granting Root's motion in part and entering an agreed preliminary injunction. The order provided, in part, the following:

    a. "Eclipse and Silver shall not directly, nor through others, transfer, sell, mortgage or otherwise encumber in any fashion" the three known properties "without leave of Court . . . nor shall they transfer, sell, mortgage or otherwise encumber in any fashion any other real property that they own in whole or in part."

    b. "Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part) use, convert, sell or otherwise dispose of any assets in his possession, custody, and control totaling more than $5,000 without leave of this Court."

2

c.  "Silver shall not individually, nor through others (including but not limited to any entity Silver owns or controls whether in whole or part), incur charges or cash advances on any credit card, debit card, or checking card or incur liens or encumbrances on real personal property or other assets, including intangible assets. Notwithstanding, Silver may pay personal expenses for day-to-day living in an amount no greater than $7,500 in total per month. Any amount greater than that shall require leave of this Court."

d.  "Collateral Damage and Eclipse shall not directly, nor through others, use, convert, sell or otherwise dispose of any assets in their possession, custody, and control totaling more than $5,000 without leave of this Court."

e.  "Collateral Damage and Eclipse shall not directly nor through others incur charges or cash advances on any credit card, debit card, or checking card, or incur liens or encumbrances on real property, personal property or other assets, in an amount greater than $5,000 in total per month. Any amount greater than that shall require leave of this Court."

9.  On May 2, 2023, Root filed a Motion for Contempt. The motion alleged that SILVER violated the Court's preliminary injunction order by engaging in financial activity prohibited by the order. Root attached multiple exhibits in support of its motion.

10. On May 3, 2023, the Court entered an order requiring SILVER and Eclipse to appear at a hearing on May 9, 2023, at 2:00 PM to show cause why they should not be held in contempt for violating the preliminary injunction. The letter specified the following: "Mr. Silver is advised that if he fails to appear in-person at this show cause hearing, the Court will issue a warrant for his arrest."

11. On May 9, 2023, counsel for SILVER filed a motion to continue the show-cause hearing, asserting that SILVER "was unable to secure transportation to Columbus for the hearing on May 9 because he is travelling from the United Arab Emirates." Later on May 9, 2023, the Court entered a notation order denying without prejudice the motion for a continuance. Among the stated reasons for denying the motion was that "there is no evidence of . . . why Mr. Silver was unable to be in Ohio by 2:00 p.m. today, despite knowing of the hearing since May 3, 2023," and "if Mr. Silver was unable to appear for the hearing, why notice to the Court was not provided more than that 24 hours before the scheduled hearing."

12. Later on May 9, 2023, the Court held the scheduled show-cause hearing. Counsel for SILVER appeared, but SILVER himself failed to appear. The Court set another hearing for May 12, 2023.

13. Later on May 9, 2023, the Court entered an Omnibus Order that memorialized the rulings the Court made during the May 9 hearing. Among other matters, the Omnibus Order articulated the following:

3

  a. The Court found that Root had established by clear and convincing evidence that SILVER and Eclipse had violated the terms of the preliminary injunction and found that SILVER and Eclipse were in contempt of court.

  b. The Court ordered SILVER to pay certain attorney fees and costs to Root.

  c. The Court ordered SILVER "to disclose to Root all of his bank accounts and non-banked assets **within fourteen days** of the date of this Order," *i.e.*, by May 23, 2023.

  d. The Court fined SILVER $500 for violating the preliminary injunction.

  e. The Court ordered the parties to appear in person for a hearing on May 12, 2023, at 3:00 PM.

14. Later on May 9, 2023, the Court issued a bench warrant based on SILVER's failure to appear at the May 9 hearing. The Court filed a corrected bench warrant on May 10, 2023.

15. On May 12, 2023, the Court entered an order granting a motion to withdraw as counsel that had been previously filed by counsel for SILVER, Eclipse and Collateral Damage.

16. Also on May 12, 2023, the Court held the scheduled hearing. SILVER appeared in person. On May 12, 2023, following the hearing, the Court entered an order to appoint a receiver. The order appointed an attorney as the receiver of "all monetary and real property assets in the possession, custody, or control of Defendant Brinson Caleb Silver" and "all monetary and real property assets of Defendant Collateral Damage, LLC and Eclipse Home Design, LLC, including, but not limited to, the Properties as defined in the Preliminary Injunction."

17. On May 15, 2023, Judge Morrison sent a letter to the U.S. Attorney for the Southern District of Ohio. The letter requested that an attorney from the U.S. Attorney's Office prosecute SILVER for criminal contempt in accordance with Rule 42(a)(2) of the Federal Rules of Criminal Procedure.

18. On May 17, 2023, the Court entered an Order Appointing Receiver. The order summarized the Court's findings in the May 12 hearing, including that "Eclipse sent more than $40,000 in ACH payments to an unknown entity, NEWREZ-SHELLPOIN," that "Silver spent lavishly while traveling the globe," including "$20,000 on plastic surgery and another $8,000 at a luxury resort on Bali (among many, many other extravagant expenditures)," and that "the property at issue is in imminent danger of being lost, concealed, or squandered." The order also set forth the terms of the receivership. It ordered SILVER, Collateral Damage, and Eclipse to turn over to the Receiver "as soon as possible or within three days from the date of this Order, any and all Books and Records" and any information requested by the Receiver. It also ordered SILVER, Collateral Damage, and Eclipse to "take all steps necessary to give the Receiver access to" "any real property," including but not limited to the three known properties.

19. Among the records in the FBI's possession are records for two Bank of America, National Association accounts, account numbers ending in 3853 and 6351, both titled in SILVER's name; Blue Ridge Bank, National Association account number ending in 2721, titled in SILVER's name; PayPal business account number ending in 0892 for Collateral Damage; and PayPal personal account number ending in 8537 for SILVER. Based on these records, from on or about February 16, 2023, through on or about March 24, 2023, the following disbursements were made from the aforementioned accounts in the approximate dollar amounts:

    a.     $92,488.43     Made through PayPal accounts

    b.     $24,874.41     Indonesia businesses and withdrawals made in Indonesia

    c.     $21,937.59     Southwest Plastic Surgery

    d.     $11,780.84     Capital One credit card

    e.     $10,000.00     Brennan, Manna & Diamond

    f.     $ 7,672.01     Blackbaud Tuition Management

    g.     $ 5,000.00     Western Union

20. On May 25, 2023, SILVER sent an email to the Receiver, with attachments, containing certain information regarding the assets of SILVER, Collateral Damage, and Eclipse. Neither the email nor the attachments disclosed that SILVER, Collateral Damage, or Eclipse owned or controlled real property located at an address on Vista Del Otero in Ramona, California.

21. On May 26, 2023, the Court entered an order memorializing rulings that had been made in a telephone conference earlier that day. During the telephone conference, SILVER moved for an extension of time to disclose his assets. The Court granted the motion. The written order directed SILVER "to disclose to Root all of his bank accounts and non-banked assets" on or before June 2, 2023.

22. On May 30, 2023, SILVER sent an email to the Receiver, with attachments, containing additional information regarding the assets of SILVER, Collateral Damage, and Eclipse. Neither the email nor the attachments disclosed that SILVER, Collateral Damage, or Eclipse owned or controlled real property located at an address on Vista Del Otero in Ramona, California.

23. On May 31, 2023, new counsel for SILVER, Eclipse, and Collateral Damage entered an appearance. On June 2, 2023, counsel for SILVER, Eclipse, and Collateral Damage filed a motion to modify the injunction and receivership orders, to allow payment of attorney's fees.

24. On June 5, 2023, Root filed a notice of SILVER's noncompliance with court orders. Specifically, it provided notice that SILVER had not disclosed "to Root all of his bank accounts and non-banked assets" on or before June 2, 2023.

25. On June 6, 2023, the Receiver filed a Motion for Reappointment of Receiver. The Motion asserted that the Receiver had discovered real property located at an address on Vista Del Otero in Ramona, California, that was titled in Eclipse's name. According to the motion, the property had "not previously been disclosed or known to the Court," and the Receiver requested that the property be specifically designated as being within the control of the Receiver. On June 7, 2023, the Court granted the motion.

26. According to documents the FBI has received from Corinthian Title Company, Inc., which was the title company for the closing of real property located at an address on Vista Del Otero in Ramona, California, on or about July 29, 2022, Eclipse Home Design LLC purchased the real property located at an address on Vista Del Otero for approximately $1,850,000.00. According to property records, as on June 13, 2023, Eclipse Home Design LLC remained the listed owner of the real property located at an address on Vista Del Otero.

**SILVER discusses obtaining a passport from a country without an extradition treaty with the United States and where the United States cannot access his assets.**

27. On or about June 2, 2023, the United States received recordings of two phone calls between SILVER and individuals who work for Nomad Capitalist, which advertises itself as a "boutique consulting firm advising legal offshore tax planning, international relocation, second citizenship, and global citizenship." *See* https://nomadcapitalist.com/about/faq/. Among other information on its website is a list of "The Best Non Extradition Countries to Become Invisible." *See* https://nomadcapitalist.com/web-stories/the-best-non-extradition-countries-to-become-invisible/. Although the United States received the recordings in June 2023, the phone calls occurred before the civil suit was filed.

28. On or about January 19, 2023, $75,000.00 was wired from Bank of America, National Association account number ending in 3853 to Nomad Capitalist. On or about February 1, 2023, SILVER electronically signed a "Refund Agreement" with Nomad Capitalist for $75,000.00 to be refunded to him. On or about February 1, 2023, an incoming $75,000.00 wire was credited to account number ending in 3853.

29. The following items were captured from the aforementioned recordings:

a. SILVER wanted citizenship with a country which would not extradite him to the United States, and the speed of obtaining citizenship was important to him in deciding which country.

b. SILVER wanted a foreign bank account that the United States could not freeze.

c. SILVER wanted to move $4 million to $10 million outside of the United States. The money was in bank accounts and real estate properties. He owned eight real estate properties located in Florida, California, Chicago, and New York. He believed he could sell the properties quickly.

d. SILVER prefers to have the proceeds he receives from the sale of a real estate property to be directly deposited into a foreign bank account.

## CONCLUSION

30. Based on the foregoing facts, I believe there is probable cause for the arrest of Brinson Caleb Silver for violations of 18 U.S.C. § 401(3), Criminal Contempt.

I respectfully request that the warrant be issued.

Respectfully submitted,

*Matthew J. Daly*
Matthew J. Daly
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this __14th__ day of June, 2023 at Columbus, Ohio.

*Chelsey M. Vascura*
CHELSEA M. VASCURA
U.S. MAGISTRATE JUDGE